ORIGINAL

Approved: _____Jessica Greenwood_____
ANDREW C. ADAMS / JESSICA GREENWOOD
Assistant United States Attorney

Before:  THE HONORABLE DEBRA FREEMAN
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - - x

**19 MAG 10068**

UNITED STATES OF AMERICA            :  **SEALED COMPLAINT**

        - v. -                      :  Violation of 18 U.S.C.
                                       § 1956(h).
DANIEL DANIEL,                      :
    a/k/a "Roma,"                      COUNTY OF OFFENSE:
                                    :  NEW YORK
                Defendant.
                                    :

- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   AARON J. OTTERSON, a Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, deposes and states:

**COUNT ONE**

   1.  From at least in or about February 2017 up to and including at least in or about January 2019, in the Southern District of New York and elsewhere, DANIEL DANIEL, a/k/a "Roma," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Sections 1956(a)(1)(B)(i).

   2.  It was a part and an object of the conspiracy that DANIEL DANIEL, a/k/a "Roma," and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions which in fact would and did involve the proceeds of specified unlawful activity, to wit, wire fraud, interstate transportation of stolen property, interstate sale and receipt of stolen property, trafficking in contraband

tobacco, operation of an illegal gambling business, fraud relating to identification documents, and conspiracy to commit each of those offenses, knowing that the transaction would be designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I am a Special Agent with the FBI, and I am one of the agents with primary responsibility for the investigation of this case. I have been employed as a Special Agent with the FBI since in or about 2015. During my time as a Special Agent for the FBI, I have participated in investigations of racketeering enterprises, firearms trafficking, firearms offenses, and violent crimes, among other things, and have conducted or participated in surveillance, the execution of search warrants and cellphone location-tracking orders and warrants, debriefings of informants, and reviews of taped conversations. This affidavit is based upon my own observations, my conversations with other law enforcement agents and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. Beginning in or about 2014, the FBI investigated a particular organized criminal group operating in the Southern District of New York and elsewhere (the "Shulaya Enterprise"). The Enterprise pursued a spectrum of criminal activity, including the transportation and sale of stolen property, wire and bank fraud, illegal gambling operations, extortion of debtors to its gambling operation, and the use of false identification documents and counterfeit credit cards in order to illegally purchase merchandise.

5. The Enterprise was controlled by a "*vor v zakone*." *Vor v zakone* is a Russian phrase translated as "thief-in-law" and refers to high-level criminal figures associated with the former Soviet Union. Traditionally, *vors* receive

2

*obskchak*, or tribute, from criminals and laypersons within the *vor*'s protection, license criminal activity by others, and resolve disputes between members of the criminal community. With respect to the Shulaya Enterprise, the *vor* was an individual named Razhden Shulaya (Shulaya or "the Vor").[1] Shulaya operated the Shulaya Enterprise in and around the New York City area, including in Manhattan and Brooklyn, as well as in other parts of the country, including Las Vegas, Los Angeles, and Southern Florida.

6. The Shulaya Enterprise engaged in an array of criminal activities consistuting "specified unlawful activity" as defined in Title 18, United States Code, Section 1956. For example, as charged in the Shulaya Indictment and ultimately as proven at Shulaya's trial in 2018, Shulaya and the Shulaya Enterprise engaged, during the period relevant to this Complaint, in:

a. A conspiracy to engage in the sale and transportation of stolen goods, namely stolen contraband cigarettes, in violation of Title 18, United States Code, Sections 371, 2314, 2315, and 2342 (Counts Two and Three of the Shulaya Indictment).

b. A conspiracy to commit fraud relating to identification documents, in violation of Title 18, United States Code, Section 1028 (Count Four of the Shulaya Indictment).

c. Wire fraud conspiracy, in violation of Title 18, United States Code, Section 1349 (Count Five of the Shulaya Indictment).[2]

---

[1] Shulaya was charged in or about June 2017 with, among other crimes, conspiracy to commit racketeering. *See United States v. Shulaya et al.*, S9 17 Cr. 350 (LAP) (the "Shulaya Indictment"). Following a trial in the summer of 2018, Shulaya and another member of the Shulaya Enterprise, Avtandil Khurtsidze, were convicted of all counts in the Shulaya Indictment, including racketeering conspiracy and related charges described in more detail below. Shulaya was ultimately sentenced to a term of imprisonment of 45 years.

[2] In addition to the specific counts of conviction listed in this paragraph, Shulaya was also convicted on Count One of the Shulaya Indictment, charging him for participating in a racketeering conspiracy. In addition to the charges listed in

7. In the course of the investigation of the Shulaya Enterprise, the FBI obtained judicial authorization to intercept wire and electronic communications over certain cellular telephones belonging to Shulaya. Among those telephones was a cellular telephone assigned a call number ending -2477 (the "Shulaya Phone"). At the time of Shulaya's arrest in or about June 2017, the arresting FBI agents seized the Shulaya Phone, and the Shulaya Phone was later searched pursuant to a judicially authorized search warrant. From my review of translated and transcribed communications intercepted over the Shulaya Phone during the course of the investigation, and my review of the contents of the Shulaya Phone following its seizure and search, I have learned, among other things:

a. From in or about January 2017 through in or about June 2017, Shulaya, using the Shulaya Phone, held multiple conversations with DANIEL DANIEL, a/k/a "Roma," the defendant, using a particular telephone assigned a call number ending in -0808 (the "Daniel Phone").[3]

b. Several conversations between DANIEL and Shulaya concerned the establishment of a purported vodka import-export business referred to under the name "Tropport." More specifically, several conversations concerned DANIEL's guidance to Shulaya regarding the establishment of bank accounts under the "Tropport" corporate name. Several of these bank account-related conversations included discussions of false representations to be made to the bank in connection with the opening of these accounts and the receipt and use of debit and credit cards associated with the purported "Tropport" entity.

---

this paragraph, Shulaya's racketeering predicate offenses included the operation of an illegal gambling business, sale of stolen jewelry, and extortion.

[3] From my review of the content of the Shulaya Phone, I have learned, among other things, that the Daniel Phone is listed as a contact in the Shulaya Phone under a name that translates from Russian as "Roma Papa Daniel." Further, from my review of records provided by Western Union, I have learned, among other things, that from in or about January 2017 through in or about June 2017, *i.e.*, the same period of time during which DANIEL, using the Daniel Phone, was in contact with Shulaya over the Shulaya Phone, an individual using the name "Daniel Daniel" and providing the telephone number assigned to the Daniel Phone conducted over twenty-five transactions through Western Union.

For example:

(i) On or about January 20, 2017, DANIEL, using the Daniel Phone, and Shulaya engaged in a series of calls regarding the opening of a corporate bank account under the "Tropport" name. For example, at approximately 4:49 p.m. (EST), Shulaya placed a call to the Daniel Phone and stated, in substance and in part, that Shulaya was then inside of a Bank of America branch office and instructed DANIEL to stand by for additional calls regarding any questions that Shulaya might have. At approximately 5:04 p.m. (EST), Shulaya again called the Daniel Phone and placed a person who, from the content of the call, appears to have been a bank employee assisting in the opening of an account. During the subsequent conversation between that employee and DANIEL, the employee asked, in substance, what Tropport's business was, and DANIEL explained that the business was engaged in the import, export, and manufacturing of vodka. DANIEL then directed the employee in opening a particular type of corporate bank account, and directed the employee to provide both debit and credit cards to Shulaya. On a subsequent call at approximately 5:18 p.m. (EST), DANIEL advised Shulaya to request a particular cash advance limit on a corporate card in the name of "Stella," a purported employee of Tropport, but not the inform the bank of "Stella's" age.

(1) From my review of other intercepted communications over the Shulaya Phone and other intercepted cellular telephones belonging to Shulaya, including calls with DANIEL, I have learned, among other things, that "Stella" was not an employee of "Tropport," but rather was Shulaya's minor daughter.

(2) From my review of documents and items seized in Shulaya's Las Vegas hotel room at the time of Shulaya's arrest, I have learned, among other things, that on or about June 6, 2017, immediately prior to his arrest, Shulaya was in possession of, among other things, electronic devices loaded with files and software to be used in connection with a scheme to defraud casinos (as described in the Shulaya Indictment), approximately $2,950 in cash, and a Bank of America "Business Debit" card in the name of "Tropport LLC Stella Shulaia."

(3) From my review of documents and items seized by FBI agents involved in this investigation at Shulaya's New Jersey residence on or about June 6, 2017, I have learned that among Shulaya's documents was a packet of account

5

opening records provided by Bank of America, dated January 20, 2017, for a corporate account in the name of "Tropport LLC."

(4) From my review of documents provided by Bank of America relating to the "Tropport" account described above, I have learned, among other things, that on or about February 1, 2017, a check drawn on the "Tropport" account was made out to "RWS, Inc.," ostensibly for "Tropport LLC services," in the amount of $2,136.00. From my review of publicly available records provided by the Nevada Secretary of State, I have learned that "RWS, Inc." is an entity incorporated in the State of Nevada listing "Daniel A. Daniel" as the President, Secretary, Treasurer, and Director.[4]

(ii) On or about February 4, 2017, DANIEL, using the Daniel Phone, and Shulaya discussed, in substance and in part, the "Tropport" company and a website that DANIEL was assisting in creating on Shulaya's behalf. During that conversation, the following exchange occurred:

DANIEL: [A]t least it [*i.e.*, "Tropport"] gives you a cover for where you get the money from, they will believe you. . . . My lawyers would say, "he pays you so much money every time he bring[s] it to America. What the Federal money has to do with it? What fucking criminal are you talking about?" What criminal? What fucking money laundering are you talking about?"

Shulaya: I got you, dear, I got you. . . . Don't tell anybody about this. [Unintelligible] that I have told you about it. I don't want Lasha to know about it or anybody else. Do you understand?

DANIEL: About what?

Shulaya: About what you and I are doing.[5]

---

[4] "Tropport" was also formally opened as a limited liability company in the State of Nevada. From my review of records provided by the Nevada Secretary of State, I have further learned that the same street address has been listed in Nevada corporate records for Tropport, for Shulya as the Manager of Tropport, and for DANIEL as an officer of RWS, Inc.

[5] From my review of data relating to the call routing information associated with this communication, I have learned that this call between DANIEL and Shulaya was routed via a cellular tower

(iii) On or about February 6, 2017, DANIEL, using the Daniel Phone, and Shulaya held a series of calls in which the two discussed, in substance and in part, the "Tropport" company and Shulaya's use of funds held under the name of that company. For example, DANIEL advised, in substance, that Shulaya should "put your company in debt" for purposes of lowering Shulaya's tax liability associated with the "Tropport" business. In the course of discussing this point, DANIEL stated, "For example, my aunt died and she gave me $700,000 to run my business. I got these documents made, see? So when they tried me for money-laundering, they couldn't prove anything." On a call immediately prior to this call, and relating to the same discussion of manipulating "Tropport's" corporate debt, DANIEL had suggested that he would prepare a false loan contract for Shulaya purporting to document a loan by DANIEL's deceased brother to Shulaya.

8. From my review of records provided by Bank of America, I have learned, among other things, that from in or about January 30, 2017 through in or about April 20, 2017, the "Tropport" account opened by Shulaya with the assistance and advice of DANIEL DANIEL, a/k/a "Roma," the defendant, was funded primarily through the deposit of $129,901.00 in cash, and $34,100 in checks drawn on an account belonging to "Zuras Services, Inc.," with a particular address in Port Washington, New York listed on the checks (the "Port Washington Address").

9. From my review of publicly available records provided by the United States Department of Transportation, I have learned, among other things, that Zura's Services, Inc. is a registered cargo carrier, listing the Port Washington Address as its registered address.

10. From my review of intercepted telephone calls over Shulaya's multiple telephones, my review of the contents of several cellular telephones seized from Shulaya's residence, person, and hotel room at the time of his arrest, and my conversations with several cooperating witnesses and confidential sources involved in the investigation of this case, I am aware of no services provided by Shulaya or Tropport LLC to any cargo carrier companies. Indeed, from my review of cargo shipping records provided by Customs and Border Protection ("CBP"), I have learned that CBP has only one record of a shipment sent or received by a "Tropport" entity, which

---

located in Manhattan, New York.

purportedly consisted of documents being sent from South Korea to "Tropport Inc.," to an address in Brooklyn that I know from my investigation to be associated with a member of the Shulaya Enterprise who was charged in the Shulaya Indictment. Based on that same information, I have further learned that CBP has no records of vodka shipments being made to or from Shulaya or Tropport LLC.

11. Finally, from my review of witness testimony at the June 2018 trial of Shulaya, I have learned, among other things, a particular cooperating witness ("CW-1"), while working with Shulaya in furtherance of the Shulaya Enterprise's scheme to defraud casinos, asked Shulaya about the nature of the "Tropport" company and whether it was "legitimate," to which Shulaya replied "yes, of course," which CW-1 understood to be an ironic admission that "Tropport" was, in fact, "just a money laundering company."

WHEREFORE, I respectfully request that DANIEL DANIEL, a/k/a "Roma," the defendant, be imprisoned or bailed, as the case may be.

*[signature]*
Aaron J. Otterson
Special Agent
FBI

Sworn to before me this
25th day of October, 2019

*[signature]*
THE HONORABLE DEBRA FREEMAN
United States Magistrate Judge
Southern District of New York