

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 27, 2022

**BY ECF**

Hon. Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *United States v. Daniel Daniel* 20 Cr. 101 (LAP)

Dear Judge Preska:

The Government writes in advance of the sentencing of Daniel A. Daniel, currently scheduled for October 4, 2022. Daniel pleaded guilty on December 9, 2020, to Count One of the above-captioned indictment, which charged Daniel for his participation in a money laundering conspiracy in the service of Razhden Shulaya, a criminal authority referred to as a "*vor v zakone*" or "thief in law." Despite knowing the nature of his actions, and the status of his principal co-conspirator, Daniel endeavored to assist Shulaya in masking the illegal nature of hundreds of thousands of dollars in criminal proceeds. In light of his role, and in light of his recorded admissions as to prior successful efforts to evade responsibility for money laundering, the Government respectfully submits that the parties' stipulated Guidelines sentence of 30 to 37 months' incarceration is appropriate in this case.

*Factual Background*

The Shulaya Enterprise was an organized criminal group operating in the Southern District of New York and elsewhere between roughly 2014 and 2017, when agents of the Federal Bureau of Investigation ("FBI") dismantled it. During its existence, the Shulaya Enterprise pursued a spectrum of criminal activity. Among other things, the Shulaya Enterprise transported and sold stolen property, ran an illegal gambling parlor, extorted debtors to its gambling operations, laundered criminal proceeds, and planned to rig slot machines to defraud casinos. (Presentence Investigation Report ("PSR") at ¶¶ 9-10). The Shulaya Enterprise was controlled by a "*vor v zakone*." *Vor v zakone* is a Russian phrase that translates to "Thief-in-Law" and refers to "a fraternal order of elite criminals that dates back to the time of the czars." A *vor v zakone*—commonly known as a *vor*—stands at the highest level of Russian organized criminal groups, akin to a Godfather within an Italian organized criminal group. Traditionally, *vors* demand and receive

*obshchak,* or tribute, from criminals and laypersons within the *vor*'s protection, license criminal activity by others, and resolve disputes between members of the criminal community.[1]

Daniel acted as a guide to money laundering for Shulaya, who was actively pursuing opportunities to mask his illegal profits through sham bank accounts and shell corporations. (PSR ¶¶ 11-16). Daniel provided information and directions as to the best methods of laundering Shulaya's ill-gotten gains. Indeed, Daniel assisted Shulaya by handling false communications to the banks that would be host to Shulaya's illicit laundering scheme. Compl., ¶ 7(b)(i). Daniel was well acquainted with laundering methods, and expressly directed Shulaya in specific steps to take in order to create his shell companies and to amplify Shulaya's criminal conduct through a gratuitous tax fraud involving the creation of fraudulent corporate debt. *Id.* ¶ 7(b)(ii)-(iii).



*Discussion*

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range": that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see* 18 U.S.C. § 3553(a)(2); "the kinds of sentences available," 18 U.S.C. § 3553(a)(3); the Guidelines range itself, *see* 18 U.S.C. § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see* 18 U.S.C. § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," 18 U.S.C. § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7). In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

---

[1] *See generally* Robert L. Friedman, Red Mafiya: How the Russian Mob Has Invaded America (Little Browns & Co. 2000) at 9.

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)    to afford adequate deterrence to criminal conduct;
    (C)    to protect the public from further crimes of the defendant; and
    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall* v. *United States*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

The Government respectfully submits that the application of the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a) supports the imposition of a sentence consistent with the parties' stipulated Guidelines range.

First, a Guidelines sentence is an appropriate reflection of the nature, circumstances, and seriousness of the offense, to promote respect for the law, and to provide just punishment. *See* 18 U.S.C. § 3553(a)(1), (2)(A). Daniel's decision to throw in his lot with Shulaya meant that Daniel was willing to, and did, assist a sprawling, violent, and venal criminal organization. ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

Second, a substantial sentence is necessary to afford adequate deterrence. *See* 18 U.S.C. § 3553(a)(2)(B). Such a sentence is necessary and appropriate to provide a countervailing warning to those, like Daniel, who might consider joining a group like the Enterprise or undermining law enforcement's efforts to detect and disgorge their illegal proceeds. A Guidelines sentence would alert others that their knowing association to, and promotion of, organized crime merits significant punishment. Although the Shulaya Enterprise's schemes stretched well beyond traditional "white collar" or economic crime, Daniel's participation was in the role of a sophisticated money launderer. The legislative history of 18 U.S.C. § 3553 demonstrates that "Congress viewed deterrence as 'particularly important in the area of white collar crime.'" *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (citing S. Rep. No.

98-225, at 76 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3259); *see also United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (deterrence of white-collar crime is "of central concern to Congress"). General deterrence is seen as an important sentencing factor in such cases because it is seen as effective. *Martin*, 455 F.3d at 1240 ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.") (quotation marks and citation omitted); *United States v. Edwards*, 595 F.3d 1004, 1021 (9th Cir. 2010) ("[B]ank fraud, unlike an assault in a tavern or even domestic abuse, tends to be a planned, deliberate crime, which allows plenty of time for reflection, calculation of the odds of success or failure, and the ultimate decision."). The nature of Daniel's scheme was designed to render it more difficult to uncover—and his role more difficult to identify—since it was accomplished through a layer of sham corporations and false documentation. The Court should impose a sentence that deters others from following his example.

\* \* \*

For these reasons, the Government respectfully submits that a sentence within the parties' stipulated Guidelines range is appropriate in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____/s/_____
Andrew C. Adams
Jessica Greenwood
Assistant United States Attorneys